### HUNTER v. RUFF.

#### BUCHANAN v. RUFF.

1. FINDING OF FACT—CIRCUIT JUDGE—APPEAL—RES ADJUDICATA.—
   Where one Circuit Judge finds that a person is not a party to a proceeding before him, and such order is not appealed from, it is error in another Circuit Judge to decide that such person was a party to the proceeding. .

2. NON-RESIDENT PARTY—SERVICE—SUMMONS—JUDGMENT.—Where a non-resident party is served by publication under the Code, it is not required of plaintiff to show that the copy mailed to such defendant was actually received by him, in order to obtain judgment on such service.

3. IBID.—IBID.—IBID.—IBID.—Where a non-resident defendant is served by publication, and a copy summons mailed to the place where the plaintiff swears on information and belief the defendant resides, and where the plaintiff has acted in good faith, but after judgment it appears that the affidavit of plaintiff stated the wrong place as defendant's residence, such judgment is not void, but only voidable.

Before Aldrich, J., Winnsboro, December, 1894. Reversed.

Two actions, one by Cyrus W. Hunter and the other by Osmund W. Buchanan and Henry A. Gaillard against A. Fletcher Ruff, for the possession of two tracts of land.

The following is the Circuit order of Judge Kershaw for judgment, under which defendant bought:

The summons and complaint in this action having been

filed in the office of the clerk of this court on the 27th day of December, 1887, and the defendant, Cyrus William Hunter, being not a resident of this State, and having property within this State, service of the summons upon said defendant by publication having been ordered, and, pursuant to said order, the summons having been duly published in the Winnsboro News and Herald once in each week for six successive weeks, commencing on the 29th day of December, 1887; and a copy of the summons having been duly mailed to said defendant, Cyrus William Hunter, addressed to him at Leon, State of Nicaragua, Central America, his place of residence; and the time to answer having expired, and no answer or demurrer having been served on the plaintiff's attorneys; and the defendant having failed to appear, and an attachment having been issued against and upon property belonging to the defendant, Cyrus William Hunter, and proof thereof made by the affidavit of Henry N. Obear; and the defendant being not a resident of this State, the plaintiff having now in court made proof of the demand mentioned in the complaint, and the plaintiff having now in court been examined on oath respecting any payments that have been made to the plaintiff, or to any one to his use on account of such demand, whereby it appears that no such payments have been made; and the plaintiff having produced an undertaking with two sureties, approved by the clerk of this court, that he will make restitution if required, according to the requirement of subdivision 2 of section 267 of the Code of Procedure: Now, on filing said affidavit of Henry N. Obear and said undertaking, and on motion of Messrs. Obear & Rion, plaintiff's attorneys: It is ordered, that the plaintiff, Richard S. Desportes, recover against the defendant, Cyrus William Hunter, the sum of $182.85, together with his costs, to be adjusted by the clerk of this court.

The following Circuit decree of Judge Aldrich fully states the facts:

This is an action for the recovery of the possession of real property, lying in the county of Fairfield, and damages for withholding the same. Trial by jury being waived, the action was heard by the Court. The evidence submitted consists of records of this Court, and an agreed statement of facts; while the parties practically agree upon the facts, they differ widely in their views of the law, and these legal issues are submitted for the judgment of the Court. On June 20, 1888, a judgment by default was entered up in the Court in favor of one Richard S. Desportes, and against C. W. Hunter, plaintiff herein, in the sum of $232.35. The subject of said action was a money demand, viz: a sealed note, purporting to have been given by said Hunter to said Desportes, at Ridgeway, S. C., on January 5, 1871. Said Hunter was for many years prior to the institution of said action a non-resident of this State, residing in the State of Nicaragua, in Central America, and still remains a resident of that State. At the beginning of said action said Hunter owned a tract of land in Fairfield County, and still owns the tract involved in this action, unless he has lost his title thereto by reason of the facts hereinafter stated. On December 27, 1887, said Desportes begun the aforesaid action upon said money demand against the plaintiff herein by an attempt to serve the summons by publication, and by procuring an attachment to be issued and levied upon the land in dispute. Soon after the aforesaid judgment was entered up, execution was issued thereunder, levied upon the land in question, and it was sold by the sheriff of Fairfield County under said execution to the defendant herein, to whom he made a deed under which defendant entered into possession of premises, and still retains possession. Defendant paid bid, and the sheriff applied same to the payment in full of said judgment debt, satisfying the same on November 15, 1888, and the surplus, $123, is still in the hands of the sheriff. Matters remained in this status until September 16, 1889, when plaintiff, upon due and proper notice served upon said Desportes and A. F. Ruff, defendant herein,

moved this Court to set aside the said judgment by default
in favor of Desportes and against plaintiff, and the sale to
defendant made thereunder.   A. F. Ruff was made a party
to this motion, his attorney accepted service for him, and
he submitted an affidavit, and was heard by counsel in op-
position thereto.   I note this fact, because the learned Judge
who heard the motion seemed to think that A. F. Ruff was
not a party defendant therein.   This motion was heard by
this Court, and his Honor, Judge Fraser, the presiding
Judge, on December 3d, 1891, determined said motion by
an order or decree, wherein he says, this is "a motion to set
aside, first, an order for judgment, made June 20, 1888, for
$182.85 and costs; and second, a sale of a tract of land made
in pursuance of an execution issued thereunder to A. F.
Ruff by the sheriff of Fairfield County.   Except that A. F.
Ruff has furnished an affidavit to be used at the hearing of
this motion, he has not otherwise been made a party to the
proceeding before me, I do not, therefore, see how I can
with propriety make any order setting aside the sale which
will be binding upon him."   Judge Fraser then takes up
the question of service by publication, and after noting
wherein the service was illegal, and that the Court never
acquired jurisdiction of the person of Hunter, says: "This
order does not set aside the attachment, or the service of
the attachment, or the sale, nor dismiss the complaint, *as
these matters are not properly before me* (italics mine).   It
is ordered and adjudged, that the judgment and execution
above referred to be set aside for want of jurisdiction, and
that the plaintiff have leave to proceed as he may be ad-
vised."   This order was duly filed in the office of the clerk
of the court for Fairfield County, and formal notice of the
filing of the same, given by the attorneys for Hunter, was
accepted on February 26, 1892, by Mr. Obear, as attorney
for Desportes, and McDonald & Douglass, attorneys for A.
F. Ruff, defendant herein.

The defendant, A. F. Ruff, was formally made a party to
said motion to set aside the judgment.   He appeared by

counsel at the hearing, submitted affidavits in opposition to the motion, and was duly served with notice of Judge Fraser's decree.    Neither R. S. Desportes nor A. F. Ruff appealed from said decree, and the judgment of Judge Fraser is the law of this case upon all the issues adjudicated by him.    This fact should be noted and observed.    His decree, unappealed from under the law of this State, as well as official amenity, is binding upon me and every other Court in this State.    It is elementary law, requiring recitation of no authority in support thereof, that when parties have had their day in Court, submitted their controversy to it, and the Court has rendered its judgment thereon, that controversy is ended—it is *res* adjudicated, and the parties are estopped from again litigating the issue thus decided.

This is a most salutary rule of law, as the wisdom of the past and the experience of the present demonstrates.    This plaintiff and the defendant herein were parties to the motion above related, and are bound by the decree of Judge Fraser.    That decree, in express terms, decides: first, that the "judgment" be "set aside;" second, that the "execution" be "set aside;" and, third, that said judgment and execution were "set aside" for want of jurisdiction in the Court over the person of Hunter.    So far as the record before me discloses, Desportes never availed himself of the "leave" given by Judge Fraser, "to proceed as he may be advised."    He did nothing.    Matters remained in this condition until May 22d, 1893, when the present action was begun.    Afterwards the complaint was amended, and, as amended, served upon defendant January 24, 1894.    The amended complaint is in the usual form for the recovery of real property, and for damages for the withholding of the same.

Defendant in his answer, for a first defense, denies each and every allegation in the complaint.    I need not discuss in detail, and as a separate matter, this defense, because many of the allegations in the complaint are true, supported by the record and the agreed statement of facts.

The real issue comes up in the other defenses, and upon these issues I will discuss every matter included in the general denial. For a second defense, the defendant states the facts upon which his title and right to the possession of the land depends, to wit: the judgment, sale, sheriff's deed, &c., as above stated, and alleges "that at the time of his said purchase this defendant did not have any notice, actual, constructive or otherwise, of any defect or irregularities in the said judgment and execution; but the same appear to be regular upon their faces, and this defendant, therefore, avers that he is an innocent and *bona fide* purchaser for a valuable consideration, without notice, and entitled in law and equity to the protection of this Court." Under the facts of this case, it is hard to comprehend the scope of the position thus taken by defendant. He cannot rely upon the judgment and execution in the case of Desportes *v.* Hunter, because they no longer exist; they have been "set aside," are legally dead, and cannot support defendant's title from the sheriff. It is admitted that plaintiff was, prior to said sheriff's sale, the owner *in fee* of the land, and that prior to the levy of the attachment and sale, entitled to the possession thereof. "The plaintiff must, in order to entitle him to recover, show (1) a legal estate in the premises existing in him at the time the suit was commenced; (2) a right of entry in himself; (3) that at the commencement of the suit the defendant, or those claiming under him, was in possession of the premises." 6 Am. and Eng. Ency. of Law, p. 245, 12.

Defendant admits that he is in possession; therefore, nothing further need be said upon that subject. When defendant admits that plaintiff was at one time the owner *in fee* of the premises, and entitled to the possession thereof, and then sets up a title derived through judicial proceedings from plaintiff, he admits that plaintiff is the *common source* of title. That being so, the question is, which has the better title? "Both the judgment and execution are links in the title to property purchased at sheriff's sale, both are

necessary, and if either is void, the title of the purchaser fails." *Tobin* v. *Myers*, 18 S. C., 327; *Jones* v. *Crawford*, 1 McMul., 373; *Evans* v. *Hines*, 1 McMul., 490; *Ingraham* v. *Belk*, 2 Strob., 208, 218. The question, then, is, was said judgment and execution, either or both, void? If so, defendant's title is void.

Plaintiff, in moving to set aside the judgment and execution, upon notice in the original action of Desportes *v:* Hunter, complied with the law and practice of this State. *Crocker* v. *Allen*, 34 S. C., 456; *Turner* v. *Malone*, 24 S. C., 398; *Prince* v. *Dickson*, 39 S. C., 480. Plaintiff acted wisely in making A. F. Ruff, the purchaser under the execution and the party in possession of the land, a defendant in said motion, because Ruff was a party seriously and deeply interested in the subject matter of said motion. The setting aside of said judgment and execution, if held to be void, *ipso facto* destroys his title.

When Judge Fraser adjudged the said judgment and execution "be set aside," for want of "jurisdiction" in the Court over the person of Hunter, was that in law a judgment that they were void? "Jurisdiction naturally divides itself into three heads. In order to the validity of a judgment, the Court must have jurisdiction of the persons, of the subject matter, and of the particular matter which it assumes to decide. It cannot act upon persons who are not legally before it, upon one who is not a party to the suit, upon a plaintiff who has not invoked its arbitrament, or upon a defendant who has not been notified of the proceedings." 1 Black on Judgments, sec. 215. The same author says: "It is a familiar and universal rule, that a judgment rendered by a Court having no jurisdiction, of either the parties or the subject matter, is void and a mere nullity, and will be so held and treated whenever and for what purpose it is sought to be used or relied on as a valid judgment. * * * They are not voidable, but simply void, and form no bar to a recovery sought, even prior to a reversal, in opposition to them. * * * Hence, for example, if a judgment is merely

erroneous, the title acquired by a sale under it is valid and cannot be impeached collaterally; but if it is void *for want of jurisdiction*, the vendee takes no title whatever, and the sheriff's deed does not even create a cloud on the title which a court of equity can remove." 1 Black on Judg., sec. 218, p. 265. "It is an unquestioned principle of natural justice that a man should have notice of any legal proceedings that may be taken against him, and a full and fair opportunity to make his defense. The law never acts by stealth, it condemns no one unheard." *Ib.*, sec. 220, p. 267. In *James* v. *Smith*, 2 S. C., 183, where this subject is discussed, and the authorities cited, it was held, that where a court is without jurisdiction, the judgment is void, and must be so regarded when it comes before another court. See, also, Cooley on Con. Lim., 466–7; *State* v. *Newlane*, 7 S. C., 245; *Miller* v. *Miller*, 1 Bail., 245–6. In *Trapier* v. *Waldo*, 16 S. C., 290, the Supreme Court say: "It seems to us that the Court in Charleston never acquired jurisdiction over *the persons* (the words 'the persons' italicised by the Supreme Court) of Gertrude Waldo and her infant son, Rhinelander. This was not a mere irregularity, but a substantial defect, which rendered the decree of foreclosure and order of sale void, so far as these parties are concerned, and we are, therefore, constrained to hold that to this extent the title tendered the purchaser was defective and cannot be cured." *Caveat emptor* is the rule governing sheriff's sales. "Every man who goes to a sheriff's sale ought to take care." *Thayer* v. *Sheriff*, 2 Bay, 171; *Yates* v. *Bond*, 2 McCord, 382; *City of Charleston* v. *Blohme*, 15 S. C., 128. It may be argued that this rule is intended to warn the purchaser that he takes title to property purchased at his own risk. This is not the proper construction. "A purchaser of property" at execution sale "must examine and judge for himself as to the title and quality." Anderson's Law Dic., 159. "It is well settled that a purchaser at a judicial sale (where the rule *caveat emptor* does not *apply*) is bound to make inquiry as to the jurisdiction of the court

which ordered the sale, and whether all proper parties were before it." *Trapier* v. *Waldo*, 16 S. C., 282; *Gardner* v. *Cheatham*, 37 S. C., 77; *Smith* v. *Winn*, 38 S. C., 192; *Cathcart* v. *Sugenheimer*, 18 S. C., 120; *Tideral* v. *Bouknight*, 25 S. C., 275; and *Iseman* v. *McMullan*, 36 S. C., 36.

Many writers and courts have discussed the question, what judgments are *void* and *voidable?* Mr. Black, in his work on Judgments, vol. 1, sec. 218, pp. 265–6, says: "The result deducible from a majority of the cases seems to be, that it is only when the judgment appears *upon its face* to have been rendered without jurisdiction that it can be considered a nullity *for all purposes*;" and in sections 170, 246, 270, 290, the learned author endeavors to state the distinctions between *void* and *voidable* judgments. Mr. Freeman, in his work on Judgments, says: "The weight of the adjudged cases * * * sustains the proposition, that the judgment of a domestic court of general jurisdiction is not void, except when the court has no jurisdiction over the subject-matter of the suit, or when, having such jurisdiction over the subject-matter, it is shown by the record to have no jurisdiction over the judgment defendant." Sec. 116. Again, he says, in sec. 116: "A judgment rendered without in fact bringing the defendant into court, unless the want of authority over them appears in the record, is no more void than if it were founded upon a mere misconception of some matter of law or of fact occurring in the exercise of an unquestionable jurisdiction." See, also, sections 124–135. It is settled law in this State that where upon the face of the record it is apparent that the court never acquired jurisdiction of the person of the defendant, that a judgment against such defendant is void. *Gardner* v. *Cheatham*, 37 S. C., 74. The rule and principle deduced from the authorities in this State establish the proposition, that a judgment, regular on its face, is not a void judgment, in the sense that it can be treated as such in a collateral proceeding; but that they are voidable, in a direct proceeding in the original case, when extrinsic evidence shows a want of ju-

risdiction over the person of the defendant. *Stanly* v. *Stanly*, 35 S. C., 97–98; *Turner* v. *Malone*, 24 S. C., 401–405, *Gardner* v. *Cheatham, supra,* and other authorities cited. In *Le Conte* v. *Irwin*, 19 S. C., 554, a decree for foreclosure of mortgage, after a sale of the premises thereunder, was set aside, but the title of the purchaser was held to be good. The judgment in this case was set aside, under sec. 195 of the Code, upon the ground of "excusable neglect, and the irregular, if not illegal, mode of entering and enforcing the judgment for money and foreclosure and sale." This was a motion addressed to the discretion of the Court, and the case, therefore, is without authority as to the subject of jurisdiction. In *Eason* v. *Witkowsky*, 29 S. C., 239, "the proceedings in escheat" were under a special statute, and the notice to claimants was adjudged sufficient.

Counsel for defendant, in his argument, says, it is well settled that the purchaser under an execution not void, but voidable only, will be protected in his title, and, in support of this proposition, cites *Henry* v. *Furgerson*, 1 Bail., 512; *Ingraham* v. *Belk*, 2 Strob., 207; *Williamson* v. *Farrow*, 1 Bail., 611; *Laurence* v. *Grambling*, 13 S. C., 124; *Darby* v. *Shannon*, 19 S. C., 558; *Tobin* v. *Myers*, 18 S. C., 328; and Freeman on Ex., sec. 343. In *Tobin* v. *Myers*, 18 S. C., 327, it is held: "For reasons of policy to sustain sheriff's sales, purchasers at such sales are favored to the extent that mere irregularities in the process will not avoid the sale. If purchasers, at their peril, were held responsible for the perfect regularity of process, under which property is sold, the result would be that property would be sold at a sacrifice, and the usefulness of such sales be greatly impaired, if not destroyed; but this rule as to mere irregularities does not apply where *either* the *judgment* or the *execution* is *absolutely void*" (italics mine). Mr. Freeman, in his work on Executions, 2 vol., sec. 345, in discussing the effect of reversal of a judgment, where a stranger has purchased under it, says: "The distinction between a void and an erroneous judgment must be kept in view, for if a judgment

is void, no rights can be based upon it. The reversal of a judgment on appeal, on the ground, not of errors in proceeding, but because the lower Court had no authority to proceed, would be, in legal effect, a declaration that the judgment was void. The judgment may not be wholly void, and yet be substantially so, because the parties whose interest was sought to be affected were not before the Court. Their title cannot be imperiled, whether there is an appeal or not. If an appeal is taken and a reversal ordered on this ground, the defect of parties is judicially declared. Titles resting on such judgment will, therefore, be declared invalid. But this invalidity arises, not from the reversal, but from the original judgment, which is found to be so destitute of legal authority that it might have been disregarded by the parties."

Judge Fraser found, by his decree, that the judgment of Desportes *v.* Hunter was not, in law, a judgment, not because of irregularities therein, but because the Court had no jurisdiction of the person of Hunter. Hunter had no notice of the action, could not, therefore, defend himself, or appeal therefrom; but as soon as he heard of it, he, according to the law of this State, procured a judgment of this Court, setting aside the judgment and execution, "for want of jurisdiction," was not that, "in legal effect," an adjudication "that the judgment was void?" The case of *Williamson* v. *Farrow*, 1 Bail., 619, cited by the defendant, states the distinction. O'Neall, J., delivering the opinion of the Court, says: "The general rule as to purchasers at sheriff's sales is, that when the defect in the proceedings is such a one as may be cured by consent, acquiescence or amendment, it does not affect title. But when it is a defect of substance, as a want of authority from the Court, or when the authority is absolutely void, it vitiates and destroys the sale, and title under it." This case is cited with approval in *Laurence* v. *Grambling*, 13 S. C., 124, where the authorities are collected.

If it is true, as a legal proposition, that a judgment against

a person never brought within the jurisdiction of the Court, by legal process, is void, and a proper Court has, by its decree, pronounced such judgment void, it would seem to be a solecism to say that such judgment is voidable. In this case, Hunter, a resident of a foreign country, hears that A. F. Ruff, a stranger, is in possession of his land, claiming titles thereto as a purchaser under a judgment and execution against him. He seeks legal advice, is told that the alleged judgment is void, advised to go into the Court which rendered said judgment, and ask that it be set aside. The Court grants the relief sought, and sets aside its own judgment, and the execution issued thereon, not for *irregularities*, but upon the substantial ground, "want of jurisdiction" over the person of the defendant in said alleged action. With this deliverance from the Court, contained in a formal decree, made in a proceeding to which A. F. Ruff is a party, and from which no appeal was taken, it would be a mockery of justice to allow Ruff to retain the title and possession of Hunter's land. The sale and the sheriff's deed, as a legal consequence, fell with the judgment. From the authorities cited, it would seem that when a judgment and execution, after sale thereunder, are set aside, for irregularities, the title of a *bona fide* purchaser, as a general rule, is not impaired; but when a judgment and execution, after sale thereunder, is set aside by a Court of competent jurisdiction, "for want of jurisdiction" in the Court which rendered the judgment, the title of the purchaser is void. The decree setting aside the judgment and execution, "for want of jurisdiction" in the Court which rendered it, is an adjudication that such judgment and execution were *void ab initio*. As a third defense, defendant alleges the proceedings in attachment, the issuance, levy, &c., thereof upon the land in dispute, and further alleges, "That said action is still pending in this Court, and said attachment has never been vacated or set aside by any order of this Court, or otherwise; and should this Court hold the aforesaid judgment defective, then the defendant asks that he may be

subrogated to the rights of the said Richard S. Desportes in said action. The land in dispute was not sold under the proceedings in attachment, it was sold under the judgment and execution. The law of attachment depends upon the statutes of this State. Property is attached "as a security for the satisfaction of such judgment as the plaintiff may recover." Code, sec. 248. This section is a part of title VII. of the Code, "Of the Provisional Remedies in Civil Action." "Now, as an action cannot, as formerly, be commenced by attachment, which is now only a provisional remedy in aid of an action, it follows necessarily, that if an action fails for want of jurisdiction, the provisional remedy by attachment, in aid of such action, must fall with it." *Central R. R. Co.* v. *Georgia Co.*, 32 S. C., 342. "Property levied on after the action is commenced, under a warrant of attachment, and not described, even mentioned in the complaint, is not the subject of the action. In an action on money demands, property of the defendant, attached to secure the judgment when rendered, is not the subject of the action." *Central R. R. Co.* v. *Georgia Co.*, 32 S. C., 320.

Code, sec. 160, provides: "From the time of the service of the summons in a civil action, or the allowance of a provisional remedy, the Court is deemed to have acquired jurisdiction, and to have control of all subsequent proceedings." Again, "for the purpose of this section (providing for attachments), an action shall be deemed commenced when the summons is issued: *Provided, however*, That personal service of such summons shall be made, or publication thereof commenced within thirty days." Code, sec. 248. When an action fails for want of jurisdiction, attachment therein falls with it. *Central R. R. Co.* v. *Georgia Co.*, 32 S. C., 319. The action in Desportes *v.* Hunter failed "for want of jurisdiction"— judgment of Judge Fraser. Therefore, the attachment fell with the judgment and execution, and is legally dead. In the case of *Darby* v. *Shannon*, 19 S. C., 526, it was said in the discussion of the case, that even when no summons has been served, but attachment has been issued, the Court has

jurisdiction for certain purposes. The Court used this language in reference to the rights of third persons.

The filing of the summons and complaint, the order for service by publication, and the issuance of the attachment, the attempted illegal service, all occurred in December, 1887. Judge Fraser's decree, holding that the alleged service was illegal, that it did not give the Court jurisdiction of the defendant, is dated December 3d, 1891, was filed on December 5th, 1891, and notice thereof was served upon Ruff and Desportes. An illegal service is, in law, no service, and, under the proviso to sec. 248 of the Code above cited, the attachment lost its force and effect.

It may be argued that as Judge Fraser in his order says, "This order does not set aside the attachment, or the service of the attachment," that the attachment still remains; but this would be doing the Judge an injustice. He makes this statement, because, as he himself says, "these matters were not properly before him." If Judge Fraser had held that the attachment and service thereof were legal and valid, such a decree, unappealed from, would be the law of this case. He did not pass upon these issues, disavowed any intention of doing so, and the attachment must stand or fall upon its merits.

The counsel for defendant cites from the third paragraph of section 156 of the Code, "but the title to property sold under such judgment to a purchaser in good faith shall not be thereby affected." The paragraph from which these words are quoted provides, "the defendant against whom publication is ordered * * * may * * * be allowed to defend after judgment, or at any time within one year after notice thereof, and within seven years after its rendition on such terms as may be just * * * but the title to property sold under such judgment to a purchaser in good faith shall not be thereby affected." This provision is intended for the relief of a person who has been *duly and legally served* by publication, over whose person the Court acquired jurisdiction, and against whom judgment has been rendered.

If upon "sufficient cause shown," for example, the plaintiff has taken advantage of the defendant, or the judgment as against the plaintiff is voidable for irregularities, the Court "may" allow the defendant proper relief, "but" the title to property sold shall not thereby be affected. This is in accord with the law of this State, as it exists to-day and as it stood prior to the Code practice.

Defendant asks to "be subrogated to the rights of said Richard S. Desportes in said action." What rights? said action in law no longer exists. The only rights possessed by Desportes is the right to sue on his alleged sealed note, and to attach plaintiff's property. Plaintiff, in his affidavit, deposes that he has a defense to said note; R. S. Desportes is not a party to this action, and I can make no order affecting his rights. "Subrogation is an equitable and not a legal right. * * * It will not be enforced when it works an injustice to the rights of those having equal equities." Am. and Eng. Ency. of Law, vol. 24, p. 191. Ruff is a mere volunteer. He was not obliged to purchase this land to protect himself against an obligation for which he was bound. He relied upon the title he was purchasing, and it was his misfortune, not Hunter's fault, if he got nothing. *Caveat emptor* and subrogation are, in many respects, inconsistent doctrines—the former a rule of law, the other a doctrine of equity, and equity follows the law. Subrogation protects and enforces an existing right, but equity cannot make a void judgment valid. If Ruff is entitled to subrogation, it is to a void judgment. It seems to me that Ruff's remedy, if he has any, and upon this subject I express no opinion, is against Desportes and the sheriff for money had and received. The doctrine of *bona fide* purchase for valuable consideration, without notice, does not apply to this case. This plea is purely equitable, and cannot stand against the legal title. *Hill* v. *Burgess*, 37 S. C., 705; *Lynch* v. *Hancock*, 14 S. C., 90. I don't think that there is a defect of parties herein. Neither R. S. Des-

portes nor the sheriff claim any interest in the subject matter of this action.

*Wherefore it is ordered, adjudged, and decreed,* that the plaintiff herein have judgment in his favor, and against the defendant, for the recovery of the possession of the real property described in the complaint herein, to wit: All that piece, parcel or tract of land, lying, being, and situate in the county of Fairfield, in the State of South Carolina, containing 180 acres, more or less, situated near the town of Ridgeway, and bounded by land conveyed by plaintiff to Henry A. Gaillard and O. W. Buchanan on February 21, 1892, being the northern half of the tract formerly owned by Mrs. Anna F. Hunter, deceased, and designated by the letter "W" on a plat of survey made by H. Edmunds, surveyor, and dated June 8, 1887, which said tract was bounded on the north by land of Lloyd A. Davis and Wyatt Davis, on the east by land of Walker Davis and Wyatt Davis, on the west by land of Henry Hunter, and on the south by lands of George Hunter and Davis.

And, *by consent*, it is further ordered, that this action be, and hereby is, referred to G. W. Ragsdale, Esq., as special referee, to take testimony, and to hear and decide all issues of fact and law in and to plaintiff's demand against defendant for damages for the withholding of above described premises, as set out in the pleadings herein.

A formal order for recovery of the land in dispute was made in the case of Buchanan and Gaillard *v.* Ruff, in conformity with the foregoing decree.

From this decree the defendant appeals, on the following exceptions:

I. For that his Honor erred in overruling the order or decree of Judge Fraser by holding, in this case, that the defendant, A. F. Ruff, was formally made a party to the motion to set aside the attachment, judgment, execution, and sale, when, with all the facts before him, Judge Fraser

had held otherwise, and there was no appeal from his order and decision in the premises.

II. For that his Honor erred in holding that the defendant, A. F. Ruff, was bound by the order or decree of Judge Fraser, when Judge Fraser had held that he was not a party to the proceeding, and had refused to make any order concerning his rights, and had refused to set aside the sale to him.

III. For that his Honor erred in holding that the judgment, execution, and sale under which the defendant, A. F. Ruff, acquired possession of the land in dispute were *void;* when he should have held that said judgment and execution were *voidable* only, and that the sale thereunder was valid, and binding on the plaintiff.

IV. For that his Honor erred in holding that the attachment fell or lost its force and effect when Judge Fraser held that the judgment and execution were void for want of service of the summons, and thus overruling the decree of Judge Fraser, who refused to set aside either the sale or the attachment.

V. For that his Honor erred in holding that the provisions of section 156 of the Code of Procedure was "intended for the relief of a person who has been *duly* and *legally served* by publication, over whose person the Court acquired jurisdiction," &c.

VI. For that his Honor erred in holding that the defendant, A. F. Ruff, was not entitled to be subrogated to all of the rights of R. S. Desportes under the judgment of Desportes *v.* Hunter.

VII. For that his Honor erred in not holding that when there had been a regular and valid attachment of the land, at the commencement of the action of Desportes *v.* Hunter, the judgment, execution thereon and sale thereunder, were sufficient to pass a good and valid title to the land so attached and sold.

VIII. For that his Honor erred in not holding that the attachment being still of force under the express ruling and

decision of Judge Fraser, the sheriff was a necessary party, and that the plaintiff herein was not entitled to recover, when it appeared that the right of possession was either in favor of the defendant or the sheriff under the attachment.

IX. For that his Honor erred in not holding that the defendant was entitled to retain possession of the land as against the plaintiff, when it appeared that he purchased the same at a sale thereof, under an execution regular in form and issued upon a judgment apparently regular and valid upon its face, and no proceedings had been instituted before such sale to vacate and set aside the same.

X. For that his Honor erred in not holding that the said sale was valid and binding until set aside by a court of competent jurisdiction, and that the plaintiff could not recover possession until said sale was set aside; and that plaintiff, in this respect, was bound by the order and decree of Judge Fraser, in which he expressly refused to set the same aside, and there was no appeal from such order and decree.

XI. For that his Honor erred in not holding that the defendant was entitled to the possession of the land in dispute, when it appeared from the undisputed facts that he purchased the same at an execution sale, under a judgment against a non-resident of this State whose land had been regularly attached at the time of the commencement of the action, which gave the Court jurisdiction to render a judgment under which a valid sale of the land could be made.

XII. For that his Honor erred in not holding that the said judgment, being at the most *voidable only*, and the defendant not having notice of any hidden vice therein, and having purchased at a fair price and paid the same, he was entitled to be protected in his purchase thereof.

*Mr. J. E. McDonald,* for appellant, cites: *On finding by Circuit Judge:* 14 S. C., 225, 329; 15 S. C., 538; 16 S. C., 364. *Party privy:* 12 Ency., 93; Freeman on Judgt., sec. 162. *Void judgment:* Black on Judgt., secs. 218, 170, 246, 270, 290; Freeman on Judgt., 116; 16 Am. Dec., 702; 24

S. C., 401; 25 S. C., 280; 35 S. C., 613; 1 McC., 480; Drake on Attach., sec. 5; Ind., 246; 10 Wal., 308; 18 N. J. Eq., 441. *Attachments:* Black on Judgt., sec. 229; 10 Wal., 308; 9 How., 336, 348; 95 U. S., 714, 724, 734; 134 U. S., 320; 39 S. C., 484; 35 S. C., 94; 41 S. C., 22. *Mailing summons:* Vanfleet's Collateral Attach., secs. 480, 482; 30 Fed., 15; 16 Ency., 820; 20 Ohio St., 270; 29 S. C., 246; 19 S. C., 537; Code, 160. *Bona fide purchaser:* Rorer on Judicial Sales, 899; Freeman on Ex., 343, 345; 43 Cal., 649; 46 Cal., 17; Freeman on Judgt., 509; 12 Ency., 228 (note); 1 Bail., 513, 619; 13 S. C., 124; 19 S. C., 558; Freeman on Judgt., 482; Code, 156.

*Messrs. Jas. W. Hanahan* and *Jas. G. McCants,* contra, cite: *Vacating judgment:* 24 S. C., 405; 34 S. C., 452; 10 S. C., 275. *Void judgment:* 24 S. C., 398; 18 S. E. R., 223, 636; 13 S. E. R., 652; Freeman on Void Judicial Sales, sec. 2; Black on Judgt., 218, 219, 220; 13 S. C., 31; 1 Bail., 245; 24 S. C., 401; 19 S. C., 576; 16 S. C., 290; 15 S. C., 42; 16 S. C., 364; 18 S. E. R., 223, 636; 24 S. E. R., 59. *Attachment:* Code, 248; 32 S. C., 342. *Sale under void judgment:* 1 McC., 313; 2 Hill, 438; 2 Strob., 218; 18 S. C., 327; 14 S. C., 480; 1 Bail., 619; 13 S. C., 124. *Subrogation:* 29 S. C., 508; Seldon on Sub., secs. 240, 360, 241; 2 Bay, 169; 2 McC., 382; 1 Hill, 287; 2 Hill, 403; 15 S. C., 125. *Bona fide purchaser:* 16 S. C., 282; 18 S. C., 126; 25 S. C., 279; 26 S. C., 173; 36 S. C., 36. *Finding by Circuit Judge:* 2 Rich. L., 17; 3 S. C., 437; 14 S. C., 225; 16 S. C., 364.

July 6, 1896. The opinion of the Court was delivered by

MR. CHIEF JUSTICE MCIVER. These two cases, growing out of practically the same state of facts, and depending upon the same principles of law, were heard and will be considered together, and, for convenience, will be spoken of as one case. The facts are undisputed, and may be stated as follows: On the 22d day of December, 1887, R. S. Desportes commenced an action against the above named Cyrus

W. Hunter, to recover the amount due upon a note under seal, bearing date 4th January, 1871, and payable one day after the said date, by issuing a summons in the usual form. On the same day, to wit: the 22d of December, 1887, the said R. S. Desportes made an affidavit that a cause of action existed in his favor against said Hunter; that the said Hunter was not a resident of this State, but resided in the city of Leon, in the State of Nicarauga, in Central America, and the said Hunter could not, after due diligence, be found in this State; and that said Hunter had property in this State, to wit: the land in controversy in these actions. Upon this affidavit a warrant was duly issued, on the 27th of December, 1887, and the same was duly levied on the said land, by the sheriff, on the 28th of December, 1887. On the 27th of December, 1887, an order for service by publication was duly made, and the copy summons was duly published in the Winnsboro News and Herald (a paper published in the county of Fairfield where the land in question was situated) once a week for six weeks, beginning on the 29th of December, 1887, as appeared by the affidavit of the printer of said newspaper, bearing date the 13th of March, 1888; and on the 28th of December, 1887, an affidavit of the mailing of the summons to the said Hunter, at Leon, State of Nicarauga, Central America, was •duly made. The complaint was in the usual form, and, upon an affidavit of one of the attorneys in the action of all these previous proceedings, his Honor, Judge Kershaw, on the 14th of June, 1888, granted an order for judgment in favor of said Desportes against the said Hunter, for the amount due upon said note, together with his costs, to be adjusted by the clerk; and on the 20th of June, 1888, judgment was duly entered in accordance with said order, a copy of which order is set out in the "Case," and should be incorporated in the report of this case. Upon the judgment thus entered, an execution was duly issued, under which the land in question, which had been previously attached, was, after due advertisement, offered for sale by the sheriff of Fair-

field County, on the 5th December, 1888, and was bid off
by the defendant, Ruff, who, having immediately complied
with his bid, received titles from the sheriff, went into pos-
session of the land, and has since remained in possession
thereof. At the time said defendant bid off the land, and
paid the purchase money and went into possession, he had
no notice, either actual or constructive, of any defects or
irregularities (if any there be) in the said judgment and
execution under which he bought. On the 16th of Sep-
tember, 1889, a notice, entitled, *In re* Desportes *v.* Hunter,
was addressed to and served upon the said R. S. Desportes
and A. F. Ruff, that the said Cyrus W. Hunter would, upon
the affidavits annexed thereto, move "to set aside the order
of judgment rendered against the defendant [Hunter] by
alleged default in the above named case, on the    day of
     , 188 , and the sale of the land under said alleged
judgment, on the    day of        , 188 , and which was
bought in by A. F. Ruff," upon the several grounds men-
tioned in the notice, only one of which is it necessary to
mention, to wit: that the said Hunter was, on the 26th of
March, 1888, "and for years before, a resident of the city of
Jenotepe, in the Republic of Nicarauga, where he resided
with his family, and was not a resident of Leon, as alleged
in the pleadings," and that "no notice, summons or inform-
ation of said alleged suit was given to defendant."

This motion was heard by his Honor, Judge Fraser, upon
the affidavits set out in the "Case," who granted an order,
on 3d December, 1891, "that the judgment and execution
above referred to be set aside, for want of jurisdiction, and
that the plaintiff have leave to proceed, as he may be ad-
vised." From this order there was no appeal.

These two actions, mentioned in the title of this opinion,
were commenced on the 22d of May, 1893, to recover the
possession of the land bid off by the defendant, Ruff, at the
sheriff's sale hereinbefore referred to, for which he received
sheriff's titles, under which he went into possession. The
plaintiffs in the second action above stated seem to have

bought from Hunter a portion of the land, and their action is to recover the portion so bought by them, while the action of Hunter is to recover the balance of the land not sold to Buchanan and Gaillard, the plaintiffs in the other action. When Buchanan and Gaillard bought that portion of the land for which they sue, does not appear in the "Case," though it is stated in the argument of appellant's counsel that the conveyance from Hunter to Buchanan and Gaillard was made "after the sale to Ruff," while in the argument of respondent's counsel it is stated, that such conveyance was made "after the judgment and execution in Desportes *v.* Hunter was set aside." But, under the view which we shall take, we do not think it material when such conveyance was made, inasmuch as there is no pretense that such conveyance was made before the alleged judgment obtained by Desportes *v.* Hunter was entered, or before the sheriff's sale under which Ruff claims.

A trial by jury having been waived, the cases were heard by his Honor, Judge Aldrich, who rendered the decree set out in the "Case," which should be incorporated in the report of this case, wherein he adjudges that the plaintiffs in each of said actions are entitled to recover the land in controversy, together with the damages, to be ascertained by a referee appointed for that purpose.

From these judgments the defendant, A. F. Ruff, appeals upon the several grounds set out in the record, which should likewise be incorporated in the report of this case.

We do not propose to consider these grounds *seriatim*, but only such questions presented by such grounds as we consider material to the case. It is very obvious that the controlling inquiry in this case is, whether the appellant, Ruff, acquired a valid title to the land by his purchase at the sheriff's sale, and this depends upon the question whether the judgment obtained by Desportes against Hunter, together with the execution issued to enforce the same, afforded legal authority to make the sale. This question, also, depends upon two inquiries: 1st. Whether it has here-

tofore been concluded by the order of Judge Fraser above referred to? and, if not, 2d. Whether, as an original question, such judgment is valid or void? As to the first of these inquiries, we think it is clear, from the express terms of Judge Fraser's order, that it cannot be regarded as concluding the appellant, Ruff. No authority is needed for the proposition, that a person cannot be bound or affected by any order, decree or judgment in a case to which he has not been made a party in some one of the modes recognized by law. Now, the motion before Judge Fraser was not only a motion to set aside the judgment, but also a motion to set aside the sale made by the sheriff to the appellant, Ruff; and, as we construe the order of Judge Fraser, he, while granting the motion to set aside the judgment, declined to grant the motion to set aside the sale, upon the express ground that Ruff, not being a party to the proceeding, would not be bound thereby. He uses this language: "Except that A. F. Ruff has furnished an affidavit, to be used at the hearing of this motion, he has not otherwise been made a party to the proceedings before me." And he adds: "I do not, therefore, see how I can, wih propriety, make any order setting aside the sale which will be binding on him." So that it is manifest that Judge Fraser not only found as a fact that Ruff was not a party, but also distinctly adjudged that he could make no order binding upon Ruff, because he was not a party, and hence he, in terms, declined to make any such order. Even if it be conceded that Judge Fraser erred in his finding of fact, and in his adjudication in accordance with such finding, that cannot affect the present inquiry. That order, not having been appealed from, must be regarded as the law of the case, and was absolutely binding, whether right or wrong, upon any succeeding Circuit Judge. *Warren, Wallace & Co.* v. *Simon*, 16 S. C., 362. The question whether Ruff was a party to the proceeding before Judge Fraser was finally closed by the finding and adjudication that he was not a party thereto, and could not, therefore, be bound

by any order made in that proceeding; and it was beyond the power of any subsequent Circuit Judge to review or reverse that decision. We are, therefore, of opinion that Judge Aldrich erred in practically reversing the judgment of Judge Fraser as to the question whether Ruff was a party to the proceeding under which the judgment in question was set aside, and that appellant's first and second exceptions must be sustained. It would, indeed, be a strange result to hold that a person was a party to a proceeding under which an order granted in such proceeding should be binding upon him, in face of the patent fact that the Judge who granted such order not only held that he was not a party, but, also, for that reason, declined to grant any order affecting the rights of such person.

The question, therefore, whether the judgment obtained by Desportes against Hunter is valid, is still an open question, at least so far as the rights of Ruff are concerned. That judgment was obtained under proceedings which, upon their face, were entirely regular, and there was nothing whatever in the record to indicate any vice or even irregularity therein. It appears from the recitals made in the order for judgment granted by Judge Kershaw, that every step, required by law as necessary to the rendition of such judgment, had been regularly taken. The only vice, or even informality, that is now suggested in that judgment is, that in mailing a copy of the summons to the said Hunter, it was addressed to him at Leon, State of Nicaragua, Central America, instead of at the city of Jenotepe, in the Republic of Nicaragua, Central America, which it is now claimed was the place of residence of said Hunter, and that he never received any copy of the summons or notice of the action. The fact that Hunter never received any copy of the summons is not, and cannot be pretended, sufficient to avoid the judgment, for our statute does not require anything of the kind; and such a requirement would, in many, if not in most cases, render a proceeding by attachment nugatory; for if a plaintiff were

required to show that an absent debtor, residing in a distant country, or even in an adjoining State, actually received the copy of the summons mailed to him at his place of residence, under the penalty of having his judgment rendered void, it is very manifest that the salutary and necessary remedy by attachment would become practically useless.

The only inquiry, therefore, is, whether the mistake in mailing a copy of the summons to Hunter, at Leon, in the State of Nicaragua, Central America, instead of at the city of Jenotepe, in the Republic of Nicaragua, where it *now* appears that Hunter had his residence, renders the judgment so absolutely void that no rights can be acquired under it. The provision of our statute requiring "a copy of the summons to be forthwith deposited in the post office, directed to the person to be served, at his place of residence, unless it appear that such residence is neither known to the party making the application nor can, with reasonable diligence, be ascertained by him," must, from the very nature of the case, receive a reasonable if not a liberal construction. If a creditor whose debtor, leaving property behind, has left this State and acquired a residence in a distant State—in this case in a far distant foreign country—cannot avail himself of a remedy for the collection of his debt out of the property left in this State, unless he first obtains *certain* knowledge of the new residence of his debtor, the remedy would in many, if not most, cases become fruitless. Indeed, the very terms of the statute show that all that is required of the creditor is "reasonable diligence" to ascertain the place of residence of his debtor. This necessarily implies inquiry from others, and warrants action upon information thus acquired. These views are supported by authority. In 16 Am. & Eng. Ency. of Law, 820, it is said: "The notice must be mailed to the party at the address stated in the order of publication; a mailing to a different address will not be sufficient; but if the address stated in the order, or the affidavit to procure the order, is not, in fact, the correct one, judgment obtained thereon will

not be void, if the plaintiff acted in good faith," citing *Martin* v. *Pond*, 30 Fed. Rep., 15, which has been examined and found to sustain fully the text. It is a decision rendered by Judge Brewer, now one of the Associate Justices of the Supreme Court of the United States. So in Vanflet's Collateral Attack, 482, it is said: "A copy of a summons mailed to a place where the defendant did not reside * * * by reason of which he did not get the notice mailed to him, does not make the proceeding void," citing Martin *v.* Pond. In *Lessee of Fowler* v. *Whitman*, 2 Ohio St., 270, where publication for non-residents was ordered, and plaintiff was directed to mail a copy of the paper containing the notice to them, if their address was known, and the non-residents, in an action of ejectment, offered to show that their address was known to plaintiff, who did not mail a copy to them, it was held, that as the Court, in the original suit, had found that publication had been duly made, such finding was conclusive on the non-residents. In this case Judge Kershaw, in his order for judgment, had found that a copy of the summons had been duly mailed to the defendant, Hunter, addressed to him at Leon, State of Nicaragua, Central America, "his place of residence." In *Weber* v. *Weitling*, 18 N. J. Eq., 441, where a bill was filed to set aside a sale of real estate under attachment proceedings, on the ground that the defendant, who was a resident, had been sued as a non-resident, the Court held, that the foundation of the proceeding and of the jurisdiction of the Court was not the non-residence of the defendant, but the affidavit of the plaintiff's belief of his non-residence; and the affidavit having been made in good faith, and appearing regular on its face, the Court could not declare the proceedings void. In Freeman on Judgments, sec. 126, quoted with approval in *Darby* v. *Shannon*, 19 S. C., at page 537, and again in *Eason* v. *Witcofsky*, 29 S. C., at page 246, it is said: "There is a difference between a want of jurisdiction and a defect in obtaining jurisdiction. * * * In case of an attempted service, the presumption exists that the Court considered

and determined the question whether the acts done were
sufficient or insufficient.   If so, the conclusions reached by
the Court, being derived from hearing and deliberating
upon a matter which, by law, it was authorized to hear
and decide, although erroneous, are not void.   When, in
a proceeding by attachment, the ground required by the
statute for the issuing of the process had been laid, and the
process has been issued and executed, the jurisdiction of
the Court is complete.   Where there has been an insuffi-
cient publication, or an entire failure to publish the pro-
ceedings, are not so invalidated as to be made void."   Now,
in the case under consideration, the presumption here spoken
of has become a fact; for it is recited in Judge Kershaw's
order for judgment, that a copy of the summons was duly
mailed to the defendant, at "his place of residence;" and
even if such finding of fact should afterwards turn out to
be erroneous, that will not render the judgment void.   In-
asmuch as it clearly appears that all the proceedings, lead-
ing up to the judgment under which the land in controversy
was sold, were entirely regular upon their face, and disclosed
no vice nor infirmity of any kind; and inasmuch as it ap-
pears from the statements in the "Case," that Desportes, the
plaintiff in such judgment, made efforts, by inquiry, to ascer-
tain the place of residence of the defendant therein, and, in
good faith, acted upon the information thus acquired, we
cannot think that the fact, that it has been made to appear,
since the sale by the sheriff, and *since the payment of the
purchase money* by the appellant, that the information thus
acquired by Desportes was erroneous, and that, in fact, the
city of Jenotepe, instead of the city of Leon, was the place
of residence of defendant, Hunter, can be sufficient to re-
quire the Court to declare the said judgment absolutely
void, and to invalidate all proceedings thereunder, even
against an innocent third person who has been induced to
pay out his money, in reliance upon a judgment entirely
regular upon its face, and not even indicating any infirmity
of any kind in it.   While it is quite true, as contended for

by respondent's counsel, that the proceedings before Judge Fraser, culminating in an order setting aside the judgment, became a part of the record, yet it must be remembered that these proceedings were not even commenced until some time after the sheriff's sale, under which appellant claims, was made; and at that time there was nothing in the record, or elsewhere, so far as the "Case" shows, to even suggest that there was any vice, or even irregularity, in the judgment. But, again, in 1 Black on Judgts., sec. 218, it is said: "The result deducible from a majority of the cases seems to be, that it is only when the judgment appears upon its face to have been rendered without jurisdiction that it can be considered a nullity for all purposes." And in Freeman on Judgts., sec. 116, quoted with approval in our own case of *Turner* v. *Malone*, 24 S. C., at page 403, that author states what he considers the most approved view, as follows: "It has often been said that a judgment is void whenever the Court which pronounced it had not jurisdiction of the parties to the judgment, or of the subject matter in controversy. This is, undoubtedly, true everywhere, provided the want of jurisdiction is not controverted, or is manifest from an inspection of the record. It is also true in some of the States, even though the jurisdictional facts are asserted in the record. The weight of adjudged cases, however, sustains the proposition that the judgment of a domestic court of general jurisdiction is not void except where the Court has no jurisdiction over the subject matter of the suit, or where, having such jurisdiction over the subject matter, *it is shown by the record* (italics ours) to have had no jurisdiction over the judgment defendant. * * * The word 'void' can with no propriety be applied to a thing which appears to be sound, and which, while in existence, can command and enforce respect, and whose infirmity cannot be made manifest. A judgment rendered without in fact bringing the defendants into Court, *unless the want of authority over them appears in the record* (italics ours), is no more void than if it were founded upon a mere misconception of some

matter of law or of fact, occurring in the exercise of an un-
questionable jurisdiction.    In either case the judgment can
be avoided and made *functus officio*, by some appropriate
proceeding instituted for that purpose; but if not so avoided,
must be respected and enforced." See, also, *Voorhees* v.
*Bank of United States*, 10 Peters, at page 478, where Mr.
Justice Baldwin, in delivering the opinion of the Court,
speaking of the rights of purchasers at a sale made under
judicial process, uses this language: "The purchaser is not
bound to look beyond the decree when executed by a con-
veyance, if the facts necessary to give jurisdiction appear
on the face of the proceeding, nor look further back than the
order of the Court." So in *Cooper* v. *Reynolds*, 10 Wall., 308,
in delivering the opinion of the Court, Mr. Justice Miller,
speaking of a sale of property which had been attached, uses
this language: "Now, in this class of cases, on what does the
jurisdiction of the Court depend?    It seems to us that the
seizure of the property, or that which in this case is the same
in effect, the levy of the writ of attachment on it, is the one
essential requisite to the jurisdiction, as it unquestionably is
in the proceedings purely *in rem*.    Without this the Court
can proceed no further; with it the Court can proceed to
subject that property to the demand of plaintiff;" and after
speaking of the effect of a defective affidavit upon which
the writ of attachment was issued, which might render the
judgment reversible for error, says: "We are unable to see
how that can deprive the Court of jurisdiction acquired by
the writ levied upon defendant's property.    So, also, of the
publication of notice.    It is the duty of the Court to order
such publication, and to see that it has been properly made,
and, undoubtedly, if there has been no such publication, a
court of errors might reverse the judgment.    But when the
writ has been issued, the property seized, and that property
been condemned and sold, we cannot hold that the Court
had no jurisdiction for want of a sufficient publication of
notice."    Upon the same principle we would say that where,
as in this case, there subsequently appears to have been an

honest mistake in mailing a copy of the summons to the
defendant, at the city of Leon, which plaintiff, after inquiry,
was informed was defendant's place of residence, instead of
mailing such copy to him at the city of Jenotepe, which, it
has subsequently been made to appear, was, in fact, his
place of residence, cannot deprive the Court of jurisdiction
over the property acquired by a levy of the attachment
thereon.   The comments of Justice Brown, on the case of
*Cooper* v. *Reynolds, supra,* in the subsequent case of the
*Guaranty Trust Co.* v. *Green Cove Railroad Co.,* 139 U. S.,
137, cannot affect the former, because it was distinguished
from the latter by the fact that, in Cooper *v.* Reynolds, the
property in question was seized under a writ of attachment,
a proceeding *in rem,* while in the latter case there was no at-
tachment.   So, too, in our own case of *Trapier* v. *Waldo,* 16
S. C., 276, relied on by the Circuit Judge as well as by counsel
for respondents, there was no attachment; and, moreover, in
that case, the record not only failed to show that Gertrude
Waldo and her infant son, Rhinelander, had been properly
made parties, but rather showed to the contrary.   We are,
therefore, of opinion that even if the fact be that a copy of
the summons was not mailed to the judgment debtor at his
correct place of residence, but was mailed to him at the
place which the judgment creditor, after inquiry, was in-
formed was his place of residence, such fact did not render
the judgment so absolutely void as to render all proceedings
under it nullities; but, at most, only rendered the judgment
voidable, and liable to be declared void when such fact was
made to appear in a subsequent proceeding instituted for that
purpose; but such subsequent showing cannot be allowed
to affect the validity of any proceedings taken under such
judgment before such showing has been made.   *Turner* v.
*Malone,* 24 S. C., at page 404; *Gregg* v. *Bingham,* 1 Hill,
302; *Simms* v. *Slacum,* 3 Cranch, 300, at least, so far as the
rights of third persons are concerned.   But, in addition to
this, it seems to us that the legislature, recognizing the
hardship and injustice which an innocent purchaser, who

has bought property under a judgment regular on its face,
would suffer, if the owner of such property should be al-
lowed to come in afterwards, and by showing that there was
some hidden vice in the judgment, have the same, and all
proceedings thereunder, set aside, has made express pro-
vision for the protection of such purchaser from such hard-
ship and injustice. In the third paragraph of sec. 156 of
the Code of Procedure the provision is, that "the defendant
against whom publication is ordered * * * may * * *
upon good cause shown, be allowed to defend after the judg-
ment, or at any time within one year after notice thereof,
and within seven years after its rendition, on such term as
may be just; and if the defense be successful, and the judg-
ment, or any part thereof, has been collected or otherwise
enforced, such restitution may thereupon be compelled as
the Court directs; *but the title to the property sold under
such judgment to a purchaser in good faith shall not be
thereby affected.*" The Circuit Judge holds that the saving
clause, which we have italicised, inserted for the protection
of innocent purchasers, was intended only for the protection
of one who has purchased under a judgment obtained in a
case where the judgment debtor "has been *duly* and legally
served by publication, over whose person the Court acquired
jurisdiction, and against whom judgment has been ren-
dered." It would be sufficient to say that such is not the
language of the statutory provision; and to give it the con-
struction adopted by the Circuit Judge, it would be neces-
sary to interpolate words into the statute which the legis-
lature has not seen fit to insert therein. The section of the
Code (156) in which the provision here in question is found,
after providing in what cases a defendant may be made a
party to an action by publication, and after providing that
in such cases the Court may grant an order that service
may be made by publication, and after providing that cer-
tain other things should be done, provides, in the third
paragraph of the section, that "the defendant against whom
publication *is ordered*"—*not* that the defendant who has

been *duly and legally served by publication*—may, on suffi-
cient cause shown, be allowed to come in and defend, &c.;
but that when he does so, and he seeks to assail a judgment
recovered against him in his absence, he cannot be allowed
to divest rights of innocent purchasers, which had vested
before any assault had been made upon the judgment,
which upon its face was entirely regular and free from any
infirmity.  We, therefore, must conclude that the Circuit
Judge erred in holding that the judgment recovered by
Desportes *v.* Hunter was so absolutely void as that the ap-
pellant, Ruff, acquired no title by his purchase at the
sheriff's sale made under said judgment.

Under this view, the other questions raised in the argu-
ment become wholly immaterial, and need not, therefore,
be considered.

The judgment of this Court is, that the judgment of the
Circuit Court in each of the cases mentioned in the title of
this opinion be reversed, and that the complaints in each
of said cases be dismissed.

Upon filing of petition for rehearing, remittitur stayed.
Petition refused, on ground that no material fact had been
overlooked, on the 30th November, 1896, and stay of re-
mittitur revoked.